CH

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

UNITED STATES OF AMERICA    )
ex rel. HOWARD KELLER,    )
                               )        **No. 07 C 3832**
        Petitioner,    )
                               )        **Judge Ruben Castillo**
      v.                 )
                               )
TERRY McCANN, Warden,    )
                               )
        Respondent.    )

## MEMORANDUM OPINION AND ORDER

Illinois prisoner Howard Keller ("Petitioner") is serving a sentence of 55 years'

imprisonment for first degree murder. He has filed a Petition for Writ of Habeas Corpus

pursuant to 28 U.S.C. § 2254 ("Petition"), raising seventeen different claims.[1] (R. 12, Petition.)

Warden Terry McCann ("Respondent") has answered the Petition (R. 22), arguing that several of

Petitioner's claims are not cognizable, several more claims are procedurally defaulted, and the

remaining two claims fail on the merits. (R. 22, Resp.'s Answer.) After carefully considering

the Petition, Respondent's Answer, Petitioner's Reply, and all supporting documents submitted

by the parties, the Court concludes that Petitioner has not satisfied the standards for relief set

forth in 28 U.S.C § 2254 and therefore denies the Petition.

---

[1] Petitioner initially filed a federal habeas petition in July 2007. (R. 1, Petition.) This
Court summarily dismissed the petition for failure to exhaust state court remedies. (R. 7, Minute
Entry.) In October 2007, Petitioner filed a motion to reinstate the case along with the present
Petition. (R. 8, 10.) On October 31, 2007, this Court granted the motion to reinstate, and the
Petition was filed as of that date. (R. 11, 12.)

## RELEVANT FACTS[2]

In the early morning hours of March 11, 2000, Petitioner was walking to a liquor store on

Chicago's south side. (R. 18, Resp.'s Exs. in Supp. of Answer, Ex. A, *People v. Keller*, No. 1-

02-3186 (Ill. App. Ct. 2004).) He was carrying a .38 caliber gun. (*Id.* at 2.) He passed

Christopher Williams ("Williams") and his girlfriend Dinenya Moore ("Moore"), who were

standing together in front of their apartment building. (*Id.*) After Petitioner passed the couple by

a few feet, he pulled the gun from his pocket, turned slightly toward them, shot Williams in the

chest, and ran away. (*Id.*) Moore identified Petitioner as the shooter; she recognized him as a

man known in the neighborhood as "Petey," and then identified him from a photo array shown to

her by police. (*Id.* at 4, 6.) Later that same day, Petitioner was arrested and charged with first

degree murder. (*Id.* at 2.)

After being interrogated, Petitioner made a videotaped confession. (*Id.* at 4.) He stated

that he had purchased the .38 caliber gun "right after a friend of [his] had got shot up in front of

the currency exchange [and] so [he] felt the need to have a gun . . . seeing as though [he would]

be out at late hours." (*Id.*) He stated that he brought the gun with him that night because he did

not "really know them guys down there . . . and [did not] really get along with them." (*Id.*) He

stated that he had been walking alone when he noticed "a man standing in the doorway," which

"startled" him. (*Id.*) He "thought [he] may have heard a noise or something, so [he] got paranoid

---

[2] In reviewing a petition for federal habeas corpus relief, the Court must presume that the
state court's factual determinations are correct unless the Petitioner rebuts those facts by clear
and convincing evidence. 28 U.S.C. § 2254(e)(1); *Todd v. Schomig*, 283 F.3d 842, 846 (7th Cir.
2002). The Court has gleaned the facts of this case from the Petition and appendix thereto, along
with portions of the state court record Respondent provided pursuant to Rule 5 of the Rules
Governing Section 2254 Cases in the United States District Courts.

2

and tore [his] gun out and pointed it." (*Id.*) He "took a glimpse" at Williams and "at the same time . . . was pulling the trigger." (*Id.*)

At trial, Williams' girlfriend, Moore, testified for the prosecution. (*Id.* at 6.) She testified that she and Williams were standing outside of their apartment building when she noticed Petitioner walking towards them on the sidewalk. (*Id.*) As Petitioner came closer, she recognized him as a man known in the neighborhood as "Petey." (*Id.*) As Petitioner walked by, he said, "What's up?" to Williams, and Williams returned the greeting. (*Id.*) According to Moore, after Petitioner had taken a couple of steps past them, he "just turned around and shot." (*Id.*)

The prosecution also called Assistant State's Attorney Karen O'Malley ("ASA O'Malley"), who testified that she spoke with Petitioner several times after his arrest, and that he ultimately confessed to shooting Williams. (*Id.* at 4.) ASA O'Malley also testified that in the course of the investigation she had a conversation with a friend of Petitioner's, Juanita Johnson ("Johnson"), also known by the nickname "China," who stated that Petitioner had told her to lie and say he was with her the night of the shooting. (*Id.* at 4, 20-21.) The videotaped confession was played for the jury. (*Id.* at 4.) In his confession, Petitioner admitted to committing the shooting, and also admitted that he had asked Johnson, as well as another friend, to lie if questioned by the police and to say Petitioner was with them at a casino on the night of the shooting. (*Id.* at 22.)

Petitioner did not call any witnesses at trial. (*Id.* at 6. ) Following the close of evidence, Petitioner's counsel argued that Petitioner's videotaped confession provided evidence that he was operating under a belief, albeit an unreasonable one, that he was acting in self-defense when he

3

shot Williams, and thus requested an instruction on second degree murder. (*Id.*) Counsel further argued that there was evidence Petitioner had been acting in a reckless manner, rather than intentionally, and thus requested an instruction on involuntary manslaughter. (*Id.*) The trial court gave the instruction on second degree murder, but found insufficient evidence to warrant an instruction on involuntary manslaughter. (*Id.* at 6-7.)

On November 19, 2001, the jury returned a verdict of guilty on the first degree murder charge. (*Id.* at 7.) The trial court sentenced Petitioner to 30 years in prison. (*Id.*) Petitioner received a mandatory 25-year enhancement to his sentence pursuant to 730 ILCS 5/5-8-1(a)(1)(d)(iii) for personally discharging a firearm and causing death. (*Id.* at 1, 7.)

Petitioner appealed his conviction and sentence. On appeal, Petitioner, through counsel, raised the following arguments:

    (1)    the trial court erred in failing to give the involuntary manslaughter instruction;

    (2)    the trial court abused its discretion in refusing to permit defense counsel to ask potential jurors whether they had strong feelings about handguns;

    (3)    the prosecutor committed error by eliciting irrelevant and inflammatory testimony from the victim's grandmother;

    (4)    the prosecutor committed misconduct in his closing argument by (a) misstating the law; (b) making unreasonable inferences from the evidence; (c) unfairly attacking Petitioner; and (d) unfairly attacking the defense theory;

    (5)    the trial court erred in allowing the jury to hear irrelevant and highly prejudicial evidence in the videotaped confession about Petitioner's other activities the night of March 11, 2000, or, alternatively, that defense counsel was ineffective in not moving to bar portions of the videotape;

    (6)    the trial court erred in "treating defense counsel differently from the prosecutor" as to arguments the court permitted counsel to make; and

4

(7)     the state's sentence scheme for murder by a firearm violates the Illinois
        Constitution by providing for disproportionate penalties; violates the
        separation of powers clause in the Illinois Constitution; and violates the
        Illinois and federal constitutional prohibition against Double Jeopardy.

(R. 18, Resp.'s Exs. in Supp. of Answer, Ex. B, Pet. Br., *People v. Keller*, No. 1-02-3186.) The

Illinois Appellate Court rejected each of Petitioner's arguments and affirmed his conviction and

sentence. (*Id.*, Ex. A.)

Petitioner filed a petition for leave to appeal ("PLA") in the Illinois Supreme Court,

arguing that the Illinois firearm enhancement was unconstitutional because it violates: the

separation of powers and proportionate penalty clauses contained in the Illinois Constitution; the

Eighth Amendment of the U.S. Constitution; state and federal due process principles; and

Petitioner's Sixth Amendment rights under *Apprendi v. New Jersey*, 530 U.S. 466 (2000). (*Id.*,

Ex. D, PLA in *People v. Keller*, No. 98818.) The Illinois Supreme Court denied Petitioner's

PLA without comment on October 6, 2004. (*Id.*, Ex. E, Order Denying PLA, *People v. Keller*,

No. 98818.)

In February 2005, Petitioner, with the assistance of counsel, filed a petition for post-

conviction relief in the state trial court, raising two arguments: (1) that the prosecutor engaged in

misconduct during closing by stating that Petitioner "wins" if the jury returned a verdict of

second-degree murder; and (2) that newly discovered evidence demonstrated that one of the

jurors, Stephanie Averhart ("Averhart"), knew a potential trial witness, Johnson or "China," but

concealed this fact from the court. (*Id.*, Ex. F, Post-Conviction Pet. in *People v. Keller*, No. 00-

CR-9388.) The newly discovered evidence consisted of an affidavit from Johnson, signed in

October 2004, attesting that she went to South Shore High School from 1992-96 and had a

5

classmate named Stephanie Averhart. (*Id.*, Ex. A, Affidavit.) Johnson further attested that after Petitioner's trial, a friend named Detra Hardge called her and said "she had just spoken to Stephanie Averhart . . . [and that] Stephanie was on Howard Keeler's jury. She told me Howard testified."[3] (*Id.*)

The trial court denied the petition. (*Id.*, Ex. G, Tr. of Proceed. at H24-H28.) As for the prosecutorial misconduct claim, the trial court concluded that the argument had been raised on direct appeal and rejected, and was thus barred by *res judicata*. (*Id.* at H25.) As for the juror bias claim, the trial court concluded that there was insufficient evidence to conclude that juror Averhart knew the same Juanita Johnson who had been a potential witness in the case. (*Id.* at H26-H27.) The court also found that any error, assuming there was one, would have had no effect on the verdict for several reasons: Johnson did not testify as a witness during the trial; her testimony was unnecessary because Petitioner admitted having asked Johnson to lie for him and provide an alibi; and her proposed testimony was on a collateral issue, since Petitioner's defense theory was that he committed the shooting in self-defense, not that he was somewhere else during the shooting. (*Id.*) For these reasons, the trial court denied the petition without conducting an evidentiary hearing. (*Id.*)

Petitioner appealed. (*Id.*, Ex. H, Pet Br., *People v. Keller*, No. 1-05-2102.) Through counsel, he argued that his prosecutorial misconduct claim was not barred by *res judicata*. (*Id.*) He further argued that the trial court should have held an evidentiary hearing on his claim that one of the jurors, Averhart, failed to disclose that she knew Johnson. (*Id.*) The Illinois Appellate

---

[3] This last assertion conflicts with the record, since Petitioner did not testify or call any other witnesses at trial. (R. 18, Resp.'s Exs. in Supp. of Ans., Ex. A at 6.)

6

Court affirmed, rejecting both of Petitioner's arguments. (*Id.*, Ex. K, *People v. Keller*, No. 1-05-2102 (Ill. App. Ct. 2006).) Petitioner filed a *pro se* PLA with the Illinois Supreme Court, renewing those same two arguments. (*Id.*, Ex. L, PLA in *People v. Keller*, No. 103201.) The PLA was denied without comment on November 29, 2006. (*Id.*, Ex. M, Order Denying PLA, 103201.)

In June 2007, Petitioner filed a *pro se* motion in the Illinois Supreme Court seeking leave to file an original petition for writ of habeas corpus in that court. (*Id.*, Ex. N, Mot. for Leave to File a Pet. For Writ of Habeas Corpus, No. M11876.) He sought to raise various new arguments pertaining to the pretrial proceedings in his case, including that:

(1)     the Illinois statutes pertaining to post-arrest preliminary hearings, 725 ILCS 5/109-3.1, and pre-trial motions, 725 ILCS 5/114-1, violate the separation of powers clause contained in the Illinois constitution;

(2)     the state "exceeded its authority" when it convened a grand jury to indict Petitioner, thus violating state law and Petitioner's Fifth, Sixth, and Fourteenth Amendment rights under the U.S. Constitution;

(3)     Petitioner's *Gerstein* hearing[4] was void;

(4)     Petitioner did not receive a proper preliminary hearing in accordance with 725 ILCS 5/109-3.1;

(5)     Petitioner's indictment was void because it was obtained more than 48 hours after his arrest; and

(6)     the grand jury proceedings were void.

The Illinois Supreme Court denied Petitioner's motion for leave to file without comment, and

---

[4] In *Gerstein v. Pugh*, 420 U.S. 103 (1975), the Supreme Court held that when a defendant is arrested without a warrant, the state must provide him with a prompt hearing before a neutral magistrate to determine whether there is probable cause to detain him. That hearing is often referred to as a "*Gerstein* hearing."

thus, no petition for writ of habeas corpus was ever filed. (*Id.*, Ex. O, Order Denying Leave to File Petition for Writ of Habeas Corpus, No. M11876 (Ill. Sept. 14, 2007).)

## PROCEDURAL HISTORY

On October 31, 2007, Plaintiff filed a habeas petition before this Court, raising the following claims:

    (a)    the probable cause determination at Petitioner's *Gerstein* hearing was void;

    (b)    the state exceeded its authority in holding a *Gerstein* hearing;

    (c)    Petitioner was improperly charged with a felony via a complaint;

    (d)    the state failed to indict Petitioner within 48 hours after his arrest;

    (e)    Petitioner did not receive a proper preliminary hearing;

    (f)    the grand jury was impermissible and unauthorized, and thus the indictment was void;

    (g)    725 ILCS 5/109.3-1 is unconstitutional as violative of due process;

    (h)    725 ILCS 5/109.3-1 is unconstitutional as violative of Article I, § 7 of the Illinois Constitution;

    (i)    725 ILCS 5/109.3-1 is unconstitutional as violative of the Illinois Constitution's separation of powers clause;

    (j)    the pretrial proceedings violated Petitioner's Fourth, Fifth, Sixth, and Fourteenth Amendment rights to procedural and substantive due process;

    (k)    Petitioner's state habeas corpus petition was improperly denied by the Illinois Supreme Court without any response by the state;

    (l)    because the state did not respond to Petitioner's habeas petition, it has waived its right to respond in this case;

    (m)    the Illinois Supreme Court's denial of his habeas corpus petition did not rest on an adequate and independent state ground;

(n)     the post-conviction trial court erred in dismissing his claim that one of the
        jurors failed to disclose a prior relationship with a potential state witness;

(o)     the prosecutor committed misconduct by telling the jury that Petitioner
        "wins" if the jury returned a verdict of second-degree murder;

(p)     Petitioner's firearm sentencing enhancement violated the Double Jeopardy
        Clause of the U.S. Constitution, and the proportionate penalty and
        separation of powers provisions of the Illinois Constitution; and

(q)     Petitioner's appellate counsel was ineffective for failing to raise certain
        claims in his PLA to the Illinois Supreme Court.

(R. 12, Pet. at 1-90.)

Respondent has answered the Petition, and argues that Claims A-M and two aspects of

Claim P are not cognizable, as they concern issues of purely state law, and further, that Q is not

cognizable because Petitioner has failed to allege the violation of his Sixth Amendment right to

counsel. (R. 22, Resp.'s Answer at 8-10.) Respondent additionally argues that Claims A-J, the

cognizable portion of Claim P, and Claim Q are all procedurally defaulted, such that this Court

cannot review them on the merits in any event. (*Id.* at 10-13.) Finally, Respondent argues that

the remaining two claims, Claim N (juror bias) and Claim O (prosecutorial misconduct) both fail

on the merits. (*Id.* at 14-20.)

## LEGAL STANDARDS

This Petition is governed by the provisions of the Anti-Terrorism and Death Penalty Act

of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA allows a district

court to issue a writ of habeas corpus on behalf of a person in custody pursuant to a state court

judgment "only on the ground that he is in custody in violation of the Constitution or laws or

treaties of the United States." 28 U.S.C. § 2254(a). To obtain relief, a petitioner must satisfy the

9

requirements of 28 U.S.C. § 2254(d), which provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim—
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under this deferential standard, the Court must "attend closely" to the decisions of state courts and "give them full effect when their findings and judgments are consistent with federal law." *Williams v. Taylor*, 529 U.S. 362, 383 (2000). A state court decision is "contrary to" federal law if the state court applies a rule different from the governing Supreme Court case law or reaches an opposite result in a case involving facts materially indistinguishable from relevant Supreme Court precedent. *Bell v. Cone*, 535 U.S. 685, 694 (2002). A federal court may grant habeas relief under the "unreasonable application" clause if the state court identifies the correct legal principle from Supreme Court precedent but unreasonably applies that principle to the facts of the petitioner's case. *Id.* For a state court's decision to be unreasonable, it must be more than incorrect or erroneous; it must be "so incorrect that it lies outside the range of reasonable conclusions." *Jones v. Wallace*, ---F.3d.---, 2008 WL 1869558, at *3 (7th Cir. Apr. 29, 2008).

## ANALYSIS

### I.    Cognizability of Petitioner's Claims

Respondent argues that several of Petitioner's claims, specifically Claims A-M and two aspects of Claim P, are not cognizable, as they concern issues of purely state law. (R. 22, Resp.'s Ans. at 8-10.)  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, law, or treaties of the United States.  28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).  Errors in state law are beyond the scope of federal habeas review.  *Estelle*, 502 U.S. at 68; *see also Smith v. Phillips*, 455 U.S. 209, 221 (1982) ("Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimensions.").

In analyzing Petitioner's claims, the Court begins by noting that the *pro se* Petition is quite difficult to parse; there is confusing verbiage throughout and considerable overlap among the claims, particularly Claims A-J.  The Court has nevertheless given the Petition liberal construction and discerned as best it can the basis of each of Petitioner's seventeen claims.  *See Lieberman v. Thomas*, 505 F.3d 665, 671 (7th Cir. 2007) (habeas petitioner's *pro se* filings were entitled to liberal construction).  In Claims A-J, Petitioner takes issue with the manner in which his pretrial proceedings were conducted.  (R. 12, Pet. at 6-9.)  He argues that the state improperly indicted him and that subsequent proceedings, particularly his *Gerstein* hearing, were therefore "void." (*Id.* at 6.)

Under the Fourth Amendment, when a defendant is arrested without a warrant, the state must provide him with a "prompt" determination of probable cause by a neutral magistrate. *Gerstein v. Pugh*, 420 U.S. 103 (1975).  The Supreme Court has held that a judicial

11

determination of probable cause within 48 hours of arrest generally satisfies the promptness

requirement of *Gerstein*. *County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991). Longer

detentions are not *per se* unconstitutional, but they place a burden on the state to demonstrate that

the delay was due to some exigency or other extraordinary circumstance. *Id.* Although the

Fourth Amendment requires a prompt determination of probable cause, it "does not impose on

the States a rigid procedural framework." *McLaughlin*, 500 U.S. at 53. "Rather, individual

States may choose to comply in different ways." *Id.* In Illinois, Section 109-1(a) of the Code of

Criminal Procedure codified the Supreme Court's holding in *Gerstein*, and requires that a person

arrested with or without a warrant must be brought before a judge "without unnecessary delay"

for a probable cause determination. 725 ILCS 5/109-1(a); *see also People v. Sterling*, 828

N.E.2d 1264, 1276 (Ill. App. Ct. 2005).

    Here, Petitioner does not appear to be claiming that he was denied a *Gerstein* hearing, or

that the hearing was conducted too late; indeed, Petitioner's own filings reflect that he was

arrested on March 11, 2000, and had a *Gerstein* hearing on March 13, 2000, at which time the

court entered a finding of probable cause. (*See* R. 25, Petitioner's Reply at 10 & Exs. 1-3.)

Instead, Petitioner claims that "the court/state exceeded its authority by holding a *Gerstein*

hearing, and making a finding of probable cause," apparently because of the location of the

hearing (in a municipal branch court) and the manner in which the state chose to initiate criminal

proceedings against him (by complaint). (R. 12, Pet. at 6; R. 25, Pet.'s Reply at 1-12.) Although

Petitioner cites repeatedly to *Gerstein* and *McLaughlin*, upon careful review the Court concludes

that Petitioner's claims are premised on state law. Petitioner argues, in essence, that he was not

properly indicted in accordance with various state laws; that the pretrial proceedings violated

Article I, § 7 of the Illinois Constitution governing grand juries; and that the Illinois statute governing preliminary examinations, 725 ILCS 5/109-3.1, violates various provisions of the Illinois Constitution. (R. 12, Pet. at 6-9.) These state law claims are not cognizable in a federal habeas petition. *Estelle*, 502 U.S. at 68.

In his reply brief, Petitioner asserts that, in addition to alleging violations of state law, he is also raising a Fifth Amendment claim that he was not properly indicted by a grand jury. (R. 25, Pet.'s Reply at 3-4.) Although the Fifth Amendment requires indictment by a grand jury in felony cases, U.S. CONST. amend. V, this requirement only applies to prosecutions by the federal government, not to state prosecutions. *See, e.g., Alexander v. Louisiana*, 405 U.S. 625, 633 (1972); *Bae v. Peters*, 950 F.2d 469, 477 (7th Cir. 1991). Moreover, the basis of Petitioner's claim is unclear, since a grand jury was convened in this case. (R. 18, Respondent's Exhibits, Ex. G, Trial Records at C12-C24). It appears that Petitioner is complaining about alleged procedural irregularities in his pretrial proceedings, which he views as a violation of state criminal laws and the Illinois Constitution. (*See* R. 12, Petition at 6-9.) In short, the Court can discern no cognizable federal claims within Claims A-J.

Next, Respondent argues that Claims K-M also rest on state law and are thus non-cognizable. (R. 22, Resp.'s Ans. at 9-10.) These three claims pertain to the Illinois Supreme Court's denial of Petitioner's motion for leave to file an original habeas petition in that Court. (R. 12, Petition at 12.) In Claims K and L, Petitioner complains that the Illinois Supreme Court denied his motion without any response from the Attorney General, and in Claim M, he asserts that the Illinois Supreme Court's denial of his motion "did not rest on an independent and adequate state ground." (*Id.*) Under state law, original habeas actions can be filed in the Illinois

13

Supreme Court only with the Court's permission. Ill. Sup. Ct. R. 381. The Illinois Supreme

Court's management of its own docket in deciding these discretionary motions is beyond the

scope of this Court's federal habeas review.[5] *See Smith v. Phillips*, 455 U.S. 209, 221 (1982)

("Federal courts hold no supervisory authority over state judicial proceedings and may intervene

only to correct wrongs of constitutional dimensions.").

The legal basis of Claim M is unclear; the "adequate and independent state grounds"

doctrine arises in the procedural default context, and prohibits a federal habeas court from

reviewing a federal claim when the state court has refused to decide the claim based on an

"adequate and independent state ground," such as untimeliness. *See Williams v. Parke*, 133 F.3d

971, 973 (7th Cir. 1997). Perhaps in including this claim, Petitioner was attempting to make a

preemptive strike against a procedural default argument by Respondent,[6] but regardless, this

claim does not allege that Petitioner's conviction violated the Constitution, laws, or treaties of

the United States. *See* 28 U.S.C. § 2254(a). In short, the Court can discern no cognizable federal

claims within Claims K-M.

Next, Respondent argues that two aspects of Claim P challenging the constitutionality of

Illinois' firearm sentencing enhancement are not cognizable because they are based on Illinois

law. (R. 22, Resp.'s Ans. at 10.) This Court agrees with Respondent. Petitioner claims that the

---

[5] The Court also rejects Petitioner's argument that because the Attorney General did not respond to Petitioner's motion for leave to file an original habeas action in the Illinois Supreme Court, she has "waived being able to respond" in this case. (R. 12, Petition at 12.) This Court ordered Respondent, who is represented by the Attorney General's office, to file a response to the instant Petition in accordance with Rule 5 governing Section 2254 petitions, and Respondent did so.

[6] Respondent's procedural default arguments are addressed in detail in Section II.

14

firearm sentencing enhancement violates the Illinois Constitution's proportionate penalty and separation of powers clauses; these state law claims are not cognizable for the reasons already explained above. (*See* R. 12, Pet. at 88.)

Next, Respondent argues that Claim Q—that Petitioner received ineffective assistance when appellate counsel failed to include certain arguments in his PLA filed with Illinois Supreme Court—is a non-cognizable federal claim. (R. 22, Resp.'s Ans. at 9-10.) Again, the Court must agree with Respondent. The Supreme Court has held that a defendant has no right to counsel in the context of a state discretionary appeal, *Wainwright v. Torna*, 455 U.S. 586 (1992), and "[w]here there is no constitutional right to counsel there can be no deprivation of effective assistance." *Coleman v. Thompson*, 501 U.S. 722, 752 (1991). Because Petitioner had no constitutional right to counsel for his discretionary petition to the Illinois Supreme Court, he cannot claim ineffective assistance of counsel based on counsel's failure to raise arguments in that petition. *See Anderson v. Cowan*, 227 F.3d 893, 901 (7th Cir. 2000). For these reasons, Claim Q is not a cognizable Sixth Amendment claim.

In summary, the Court concludes that Claims A-M, portions of Claim P, and Claim Q are not cognizable.

## II.     Procedural Default

Respondent alternatively argues that Claims A-J and Claim Q are procedurally defaulted, assuming they contain cognizable claims. (R. 22, Resp.'s Answer at 12.) Respondent additionally argues that the one cognizable aspect of Claim P— that the Illinois firearm enhancement violates the Double Jeopardy Clause of the U.S. Constitution—is also procedurally defaulted. (*Id.* at 13.)

15

Before considering the merits of a habeas petition, a federal court must ensure that the petitioner has exhausted all available remedies in the state courts. 28 U.S.C. § 2254(b)(1)(A). The exhaustion requirement is premised on concerns of comity; the state courts must be given the first opportunity to address and correct violations of their prisoner's federal rights. *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004). For that opportunity to be meaningful, the petitioner must fairly present his constitutional claims in one complete round of state review. *Baldwin v. Reese*, 541 U.S. 27, 31-33 (2004); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). To satisfy this requirement, an Illinois prisoner like Petitioner must raise his claims in the Illinois Appellate Court as well as in a petition for discretionary review with the Illinois Supreme Court. *Boerckel*, 526 U.S. at 845.

Even if a petitioner has exhausted all state court remedies, his claim may nonetheless be barred under the related doctrine of procedural default. The procedural default doctrine, also rooted in comity concerns, precludes a federal court from reaching the merits of a habeas petition when either: (1) the claim was presented to the state courts and was denied on the basis of an adequate and independent state law procedural ground; or (2) the claim was not presented to the state courts and it is clear those courts would now find the claim procedurally barred under state law. *Coleman*, 501 U.S. at 735. In other words, when a habeas petitioner fails to fairly present his claim to the state courts and the opportunity to raise that claim has now passed, the claim is procedurally defaulted. *Boerckel*, 526 U.S. at 848.

The Court will address whether Claims A-J are procedurally defaulted, to the extent they include any federal claims. Claims A-J, challenging Petitioner's pretrial proceedings, were not raised on direct appeal or in his post-conviction petition filed with the state trial court. (*See* R.

16

18, Resp.'s Exs. in Supp. of Answer, Exs. A-M.) Instead, Petitioner attempted to raise these claims for the first time in a motion for leave to file an original habeas petition with the Illinois Supreme Court. (*Id.*, Ex. N.) The Illinois Supreme Court denied his request for leave to file, and so the petition was never filed. (*Id.*, Ex. O.) A habeas petitioner cannot exhaust a claim by raising it for the first time in a request for discretionary review with the state's highest court. *Castille v. Peoples*, 489 U.S. 346, 351 (1989); *Wilson v. Briley*, 243 F.3d 325, 328 (7th Cir. 2001); *see also Gilyard v. Sternes*, No. 01-6550, 2004 WL 1151558, at *6 (N.D. Ill. May 7, 2004) (claim procedurally defaulted where petitioner attempted to file an original action in the Illinois Supreme Court raising the claim, but Court denied him leave to file the action); *U.S. ex. rel. Walton v. Barnett*, No. 01-6023, 2001 WL 1519421, at *6 (N.D. Ill. Nov. 29, 2001) (where petitioner sought to raise claims for first time in an original habeas petition in the Illinois Supreme Court, and Court declined his request, claims were procedurally defaulted). Thus, Claims A-J, to the extent they raise any cognizable federal claims, are procedurally defaulted.

Respondent next argues that the one cognizable aspect of Claim P—that the firearm sentencing enhancement violates the federal Double Jeopardy Clause—is also procedurally defaulted. (R. 22, Resp.'s Ans. at 13.) Upon review, this Court agrees with Respondent. The record demonstrates that Petitioner raised this claim on direct appeal in the Illinois Appellate Court, but not in his PLA to the Illinois Supreme Court. (R. 18, Resp.'s Exs., Exs. B, D.) Accordingly, this claim is procedurally defaulted. *Boerckel*, 526 U.S. at 847. Finally, Claim Q alleging ineffective assistance of counsel is defaulted because it was never raised in any of Petitioner's state court filings, and the time for filing has long since passed.

In summary, the Court concludes that Claims A-J, P, and Q, to the extent they raise any

cognizable federal claims, are procedurally defaulted.

This Court may review procedurally defaulted claims only if the petitioner demonstrates cause for failure to raise these claims at the appropriate time and actual prejudice resulting from that failure. *House v. Bell*, 547 U.S. 518, 536 (2006). Without a showing of cause and prejudice, this Court can review the defaulted claims only if refusal to consider the claims would result in a "miscarriage of justice"—that is, where a constitutional violation has "probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 299 (1995).

Petitioner has failed to argue or establish cause and prejudice for not properly raising his claims in state court. The record also does not support a claim of actual innocence. As recounted above, Petitioner admitted in a videotaped confession to having shot the victim, and the victim's girlfriend identified Petitioner, whom she knew from the neighborhood, as the shooter. Petitioner's defense theory was that he committed the shooting in self-defense; this was based on vague statements Petitioner made in his confession that the victim had "startled" him, and that he shot the victim because he "may have heard a noise" and "got paranoid." (R. 18, Resp.'s Exs. in Supp. of Answer, Ex. A at 4.) There was also evidence in the record that Petitioner made these statements after fleeing the scene and attempting to fabricate an alibi. (*See id.* at 1-6.) The jury rejected Petitioner's self-defense theory and convicted him of first degree murder. Based on a review of the record, this Court cannot conclude that this case meets the high standard required for the miscarriage of justice exception to apply.

## III.  Merits

Finally, the Court reaches Claims N and O, which state cognizable federal claims and were properly exhausted in state court.

As an initial matter, the Court notes that throughout his Petition and Reply brief, Petitioner frames the issues with respect to Claims N and O as if this Court were making a determination in the first instance as to whether his constitutional rights were violated. That is not the role of a federal habeas court. As described above, this Court's task is limited: The Court must review the state court's adjudication of Petitioner's claims, and may grant relief only if that adjudication resulted in an unreasonable determination of the facts, or was contrary to or an unreasonable application of Supreme Court case law. 28 U.S.C. § 2254. With this in mind, the Court turns to Petitioner's claims.

### A. Juror Bias (Claim N)

In Claim N, Petitioner asserts that his rights to due process and an impartial jury were violated because one of the jurors, Averhart, failed to disclose during *voir dire* that she knew a potential state witness, Johnson. (R. 12, Pet. at 86.) As recounted above, the evidence Petitioner submitted in support of this claim was an affidavit from Johnson, a friend of Petitioner's, which was dated October 22, 2004, nearly three years after Petitioner's trial ended. (*Id.*, Ex. B.) In the affidavit, Johnson attested that she went to South Shore High School in the 1990s with a woman named Stephanie Averhart. (*Id.*) Johnson further attested that after Petitioner's trial was over, a friend named Detra Hardge called her and said "she had just spoken to Stephanie Averhart . . . [and that] Stephanie was on Howard Keller's jury." (*Id.*) Petitioner asserts that this evidence demonstrates his right to an impartial jury was violated. (R. 12, Pet. at 86.)

The Sixth Amendment guarantees a criminal defendant the right to an impartial jury. U.S. CONST. amend. VI. The Due Process Clause independently requires the impartiality of any jury empaneled to try a case. *Morgan v. Illinois*, 504 U.S. 719, 726 (1992). "Due process means

19

a jury capable and willing to decide the case solely on the evidence before it, and a trial judge

ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences

when they happen." *Smith v. Phillips*, 455 U.S. 209, 217 (1982).

The governing standard for determining whether due process requires a new trial based

on a juror's failure to honestly answer a question during *voir dire* is set forth in *McDonough*

*Power Equip. Inc., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984). Under *McDonough*, a new

trial is warranted if the defendant demonstrates: (1) that a juror failed to answer honestly a

material question on *voir dire*; and (2) that a correct response by the juror would have provided a

valid basis for a challenge for cause. *Id.* In assessing the defendant's claim, the court must

consider that "[t]he motives for concealing information may vary, but only those reasons that

affect a juror's impartiality can truly be said to affect the fairness of a trial."[7] *Id.* A defendant is

entitled to "a fair trial, but not a perfect one, for there are no perfect trials." *Id.* at 553. Thus,

"courts should exercise judgment in preference to the automatic reversal for 'error' and ignore

errors that do not effect the essential fairness of the trial." *Id.*

Jurors are considered impartial as long as they can "conscientiously and properly carry

out their sworn duty to apply the law to the facts of a particular case." *Ross v. Oklahoma*, 487

U.S. 81, 86 (1988). A request to excuse a juror for cause "must be supported by specified causes

or reasons that demonstrate that, as a matter of law, the [juror] is not qualified to serve." *Gray v.*

---

[7] The Second Circuit has observed that courts should be reluctant to "haul jurors in after
they have rendered a verdict and probe for potential instances of bias, misconduct or extraneous
influences" because "post-verdict inquiries may lead to evil consequences: subjecting juries to
harassment, inhibiting jury room deliberation, burdening courts with meritless applications,
increasing temptations for jury tampering and creating uncertainty in jury verdicts. " *United
States v. Ianniello*, 866 F.2d 540, 543 (2d Cir. 1989).

*Mississippi*, 481 U.S. 648, 653 n. 3 (1987). The decision whether to exclude a juror for cause is vested in the trial court. *Id.* In certain circumstances juror bias will be presumed and the juror must be excluded, for example, where the juror is related to one of the parties or has a financial interest in the outcome of the case. *United States v. Polichemi*, 219 F.3d 698, 704 (7th Cir. 2000). However, juror bias will be presumed in only extreme cases. *See Smith*, 455 U.S. at 217-18.

The Illinois Appellate Court issued the last reasoned decision resolving Petitioner's juror bias claim; this is the relevant opinion for purposes of this Court's review. *See Lieberman*, 505 F.3d at 671. The Illinois Appellate Court considered whether Petitioner had established that Averhart gave a false answer during voir dire, and found the evidence lacking. (R. 18, Resp.'s Exs. in Supp. of Answer, Ex. K at 8.) The court observed that the affidavit from Johnson, specifically her statement that her friend told her that Averhart said she had served on Petitioner's jury, was based on hearsay, and noted that there was insufficient evidence to show that the juror who served on Petitioner's jury was the person Johnson knew in high school, or, assuming it was, that Averhart remembered Johnson at the time of *voir dire* or realized Johnson was the same woman she knew in high school. (*Id.*) The court also found it significant that although Johnson had been identified as a potential witness in the case, she never testified. (*Id.* at 7-8.) For these reasons, the court found insufficient evidence to demonstrate that Petitioner's rights were violated. (*Id.* at 8.)

The Illinois Appellate Court did not cite to *McDonough* in its opinion, but did cite to *Barton v. Chicago & N.W. Trans. Co.*, 757 N.E.2d 533 (Ill. App. Ct. 2001), which in turn cited *McDonough. See Barton*, 757 N.E.2d at 551-53. To satisfy Section 2254(d), the state court's

decision need not cite to the relevant Supreme Court case law, or even demonstrate an awareness

of the relevant Supreme Court cases, "so long as neither the reasoning nor the result of the state-

court decision contradicts them." *Early*, 537 U.S. at 8. Here, the state court's opinion was in

accord with *McDonough*. In essence, the court found that Petitioner had presented insufficient

evidence to satisfy the first prong of the *McDonough* test, and further, that there was no

indication Averhart's presence on the jury had impaired his right to a fair trial, which is

consistent with *McDonough*'s admonition that "courts should exercise judgment in preference to

the automatic reversal for 'error' and ignore errors that do not effect the essential fairness of the

trial." *McDonough*, 464 U.S. at 553.

   Indeed, Averhart's connection to Johnson "was both uncertain and remote in time and

relationship."[8] *Enoch v. Gramley*, 70 F.3d 1490, 1506 (7th Cir. 1995). Based on the record, this

Court cannot conclude that the state court's rejection of Petitioner's juror bias claim constituted

an unreasonable determination of the facts, or was contrary to or an unreasonable application of

Supreme Court case law. *See id.* (habeas petitioner not deprived of his right to impartial jury

where state trial court refused to strike juror for cause even though she may have been acquainted

with a prosecution witness); *see also Porter v. Gramley*, 112 F.3d 1308, 1318 (7th Cir. 1997)

(habeas petitioner not deprived of his right to fair trial even though juror was a member of same

large church congregation as victim's mother); *United States v. Medina*, 161 F.3d 867, 871 (5th

Cir. 1998) (defendant not deprived of Sixth Amendment right to fair trial where juror was a high

---

[8] The record also indicates that the trial court asked Averhart, along with several other jurors, numerous questions about whether she could be fair, could follow the law, and could decide the case based on the evidence. (R. 18, Ex. G at A20-23.) The jurors were asked to stand if they felt they could not meet these obligations. (*Id.* at A20.) The record reflects that Averhart did not stand in response to any of the judge's questions. (*See id.* at A20-A23.)

school classmate of trial witness). For these reasons, Claim N is denied.

## B.    Prosecutorial Misconduct (Claim O)

In Claim O Petitioner argues that his right to a fair trial was violated by the prosecutor's comment during closing that Petitioner "wins" if the jury found him guilty of second degree murder. (R. 12, Pet. at 87.)

The standard for assessing whether a prosecutor's remark during closing argument denied the defendant a fair trial is embodied in *Darden v. Wainwright*, 477 U.S. 168 (1986). Under *Darden*, "it is not enough that the prosecutor's remarks were undesirable or even universally condemned." *Id.* at 181. Rather, the relevant question is whether the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* This is a high standard. In *Darden*, for instance, the Court concluded that the prosecutor's improper comments—including referring to the defendant as an "animal," stating that defendant should not be let out of his prison cell without a "leash," and expressing his wish that someone had "blown [defendant's] head off"—did not deprive the defendant of a fair trial. *Id.* at 180-81 & n. 9-12.

The Supreme Court found the following factors helpful in evaluating whether a defendant has been deprived of a fair trial: 1) whether the prosecutor's arguments manipulated or misstated the evidence; 2) whether the remarks implicated specific rights of the accused, such as the right to remain silent; 3) whether the defense invited the response; 4) the instructions given by trial court; 5) the weight of the evidence against the petitioner; and 6) whether the defense was afforded an opportunity to rebut the remarks. *Id.* at 182-83; *see also United States v. Morris*, 498 F.3d 634, 638 (7th Cir. 2007). The weight of the evidence against the defendant is the most

23

critical factor: "Strong evidence of guilt eliminates any lingering doubt that the prosecutor's remarks unfairly prejudiced the jury's deliberations." *Whitehead v. Cowan*, 263 F.3d 708, 729 (7th Cir. 2001).

In this case, the comment to which Petitioner objects came during the prosecutor's rebuttal argument. In accordance with *Darden*, the prosecutor's comment must be placed in context. *Darden*, at 182-83; *Morris*, 498 F.3d at 638. During closing argument, Petitioner's counsel argued that Petitioner was not guilty of first-degree murder because he thought he was shooting Williams in self-defense. (R. 18, Resp.'s Exs. in Supp. of Answer, Ex. G at E25-E45.) During his rebuttal, which spans 15 pages in the transcript, the prosecutor attacked Petitioner's self-defense theory. (*Id.* at E45-60.) He stated in part:

> I want to talk about common sense a minute because counsel
> actually seemed to argue like this could be self-defense, like in a
> world this could be self-defense, like you can believe that
> Christopher Williams posed an imminent threat of death or great
> bodily harm to the defendant. There's no evidence of that. There
> is none. . . . As reasonable people, you look at those facts. He
> poses no imminent threat to anyone. That's why self-defense
> doesn't apply here.

(*Id.* at E48.) The prosecutor further argued that Petitioner's actions following the shooting—running from the scene, lying to police, and trying to create a false alibi—undercut his self-defense theory. (*Id.* at E50-58.) He stated:

> And let's get to the heart. Why are we here . . . . A defendant shot a
> person in cold blood. He thought he got away with it. He thought
> he got away. An eyewitness saw him so he cannot fight it. I have
> been seen by somebody's eyes. So let's come up with alibis. I give
> an alibi, they break my alibi. I can't give an alibi any more. So I'll
> come up with my excuse and of course I can't fight my statement
> and say I didn't make a statement because they got me in video. So
> I can't say that he beat me because you can very clearly see me in

24

the video. What do I come up with now? Can I come up with any
excuses and they are not defenses. That's what I'll try to tell them.
A person's concept cannot, you have to be able to read and look
through it, is what he says in his statement accurate? Much of it.
But you have to read through the mind frame. When you do that,
you realize this, my partner talked about justice. And when my
partner talked about justice, you know what justice is for everyone.
Second degree? Second degree? He wins . . . [if] your verdict is
second degree.

(*Id.* at E58-E59.) It is this "he wins" comment to which Petitioner objects. (R. 12, Pet. at 87.)

Petitioner argues that this comment constituted "an inflammatory misstatement of the law

regarding self defense," and that by making this comment the prosecutor was "[b]asically telling

the jury to ignore the Judge's instructions." (*Id.*)

　　The last reasoned state court opinion to resolve Petitioner's prosecutorial misconduct

claim was the Illinois Appellate Court's opinion on direct appeal. *See Lieberman*, 505 F.3d at

671. The Illinois Appellate Court did not cite to *Darden*, but as stated above, the court need not

do so as long as its reasoning and decision do not contradict with the applicable Supreme Court

case law. *Early*, 537 U.S. at 8. The Illinois Appellate Court concluded that the prosecutor's

comment was not reversible error in light of the instructions given the jury and the substantial

evidence of Petitioner's guilt. These are, in essence, the fourth and fifth factors discussed by the

Supreme Court in *Darden*. (R. 18, Resp.'s Exs. in Supp. of Answer, Ex. A at 34-35.)

　　The record supports the Illinois Appellate Court's conclusion. First, as to the jury

instructions, the record reflects that the trial court instructed the jury numerous times that

arguments made by the attorneys were not evidence, and that the jurors must base their decision

on the evidence. (*Id.*, Ex. G at E7, E14, E60-69.) When defense counsel objected to the "he

wins" comment, the court responded, "The jury has heard the evidence and will rely on the

25

evidence in reaching their decision. I'll instruct the jury as to the law. Proceed." (*Id.* at E58-59.)

Following closing arguments, the court instructed the jury:

> Closing arguments are made by the attorneys to discuss the facts
> and circumstances of the case and should be confined to the
> evidence and to reasonable inferences to be drawn from the
> evidence. Neither opening statements nor closing statements are
> evidence, and any statement or argument made by the attorneys
> which is not based on the evidence should be disregarded.

(*Id.* at E62.) In that same vein, the court also instructed:

> The law that applies to this case is stated in these instructions and
> it is your duty to follow all of them. . . . (*Id.* at E60.)

> It is your duty to determine the facts and determine them from the
> evidence in this case. . . . The evidence which you should consider
> consists only of the testimony of the witnesses and the exhibits
> which the Court has received. . . . (*Id.* at E61.)

The court also instructed the jury on the elements of first and second degree murder. (*Id.*

at E63-65.) In doing so, the court instructed that Petitioner was presumed innocent; that this

presumption remained with him throughout every stage of the trial; that the state had the burden

of proving defendant guilty of first degree murder beyond a reasonable doubt; and that if the state

did so, the jury must continue its deliberations to determine whether a mitigating factor was

present such that he was guilty of the lesser offense of second degree murder. (*Id.* at E63-67.)

The court further instructed that the state had the burden of proving Petitioner guilty of second

degree murder. (*Id.*)

When placed in context, and considered alongside the instructions given to the jury, the

prosecutor's "he wins" comment did not "so infect[] the trial with unfairness as to make the

resulting conviction a denial of due process." *Darden*, 477 U.S. at 181. The prosecutor was not

arguing that the jury should disregard the judge's instructions, as Petitioner suggests. Instead, the comment, made once during the course of a lengthy argument, reflected something of which the jury was already no doubt aware: that Petitioner would prefer to be found guilty of second-degree murder. *See United States v. Young,* 470 U.S. 1, 19 (1985) (even though prosecutor's comment constituted improper vouching "[t]he jury surely understood the comment for what it was—a defense of his decision and his integrity in bringing criminal charges on the basis of the very evidence the jury had heard . . . "). While this Court does not condone the prosecutor's choice of words, based on the record, the Illinois Appellate Court reasonably concluded that the jury instructions were adequate to cure any unfairness caused by the prosecutor's comment. *See Whitehead,* 263 F.3d at 729 (prosecutor's comment that implied false legal standard applicable to defense theory did not deny habeas petitioner a fair trial because comment was made only once and jury was properly instructed on the law); *Aliwoli v. Carter,* 225 F.3d 826, 830 (7th Cir. 2000) (prosecutor's inappropriate comment that verdict of not guilty by reason of insanity would allow petitioner to "go laughing out the door of this courtroom" did not deprive petitioner of fair trial where trial judge properly instructed jury on the law and also instructed that attorney argument was not evidence).

The state appellate court also reasonably concluded that the remark was harmless in light of the substantial evidence of Petitioner's guilt. (R. 18, Resp.'s Exs. in Supp. of Answer, Ex. A at 34-35.) As recounted above, Petitioner admitted shooting the victim, and an eyewitness identified him as the shooter and testified that he shot the victim without warning or provocation. (*Id.* at 1-7.) The only evidence supporting Petitioner's self-defense theory was Petitioner's vague statements, made in his confession, that the victim had "startled" him, and that he "thought [he]

27

may have heard a noise or something, so [he] got paranoid and tore [his] gun out and pointed it."

(*Id.* at 4.) Petitioner made these statements only after he had fled the scene of the shooting, lied to police about his involvement, and attempted—unsuccessfully—to fabricate an alibi. In sum, there was substantial evidence in the record to support the jury's guilty verdict on the first degree murder charge, notwithstanding the comment made by the prosecutor during closing. *See Whitehead*, 263 F.3d at 729 ("In short, it is unlikely that the prosecutor's alleged misstatement of the law had any impact on the jury's deliberations in light of the evidence against [the defendant].").

Based on the record, the state court's resolution of Petitioner's prosecutorial misconduct claim did not constitute an unreasonable determination of the facts, nor was it contrary to or an unreasonable application of Supreme Court case law. Accordingly, Claim O is denied.

## CONCLUSION

For the reasons stated above, the Petition for Writ of Habeas Corpus (R. 12) is denied.

ENTERED:

**Judge Ruben Castillo**
**United States District Court**

**Dated: May 15, 2008**

28